FRANCISCO BIANCHI ROSAFA, Plaintiff and Appellee, v. MANUEL V. DOMENECH, TREASURER OF PUERTO RICO, Defendant and Appellant.

No. 6101.   Argued April 28, 1933.—Decided June 26, 1934.

*Benjamin J. Horton,* Attorney General, (*Charles E. Winter* on the brief) and *M. Rodríguez Serra,* Assistant Attorney General, for appellant. *Frank Martínez* and *Frank Bianchi* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

This case is closely connected with appeal No. 6100, *Bianchi* v. *Domenech, Treasurer,* which we have just decided. *Ante,* p. 41. It was filed separately, however, and we shall so study and decide it.

The refund is sought in the complaint of $8,345.92 paid under protest by the plaintiff as the income tax assessed by the Treasurer in accordance with an additional return, rendered on May 5, 1920, in consequence of an investigation practiced by the Treasurer and comprising the originally unreported income corresponding to the calendar year of 1917.

Averment XII of the complaint reads:

"XII.—The plaintiff alleges that the tax thus assessed and collected from said plaintiff is erroneous and unlawful, and the same has prescribed and is non-existent for the following reasons:

"1. That over five (5) years have elapsed, to wit, ten years, from the filing of the return by the plaintiff in the Treasury Department, to the date when the Treasury Department of Puerto Rico collected said tax from the plaintiff.

"2. That over six (6) years have elapsed—to wit—eight years from the assessment of the tax on the plaintiff by the Treasury Department of Puerto Rico, to the date when said Department collected said tax from the plaintiff.

"3. That according to the Federal Laws under which this tax was assessed on the plaintiff, the same is barred and nonexistent.

"4. That according to the Federal Law by virtue of which the tax was assessed on the plaintiff the collection of said tax became barred and nonexistent five years after the return was filed by the plaintiff, that is, on May 5, 1925.

"5. That according to the Federal Laws and the decisions construing them, the income tax assessed on the plaintiff could not be legally collected by the Treasurer of Puerto Rico on September 17,

1930, and the payment under protest made by said plaintiff on the date mentioned is considered a payment under duress and may be recovered by means of a judicial proceeding.

"6. That according to our own law, income taxes must be assessed and collected within five years after the filing of the return to which they refer, and the taxes cannot be collected after said period has expired.

"7. That our law provides that income taxes can only be collected by means of an attachment or any other judicial proceeding within six years after said taxes are assessed.

"8. That under the Federal Laws (which are the ones governing our case) as well as under our own law, the income tax was erroneously and unlawfully collected from the plaintiff, for it was barred and nonexistent."

The defendant demurred and answered. Some averments are admitted in the answer, others are denied, and special defenses are pleaded. The 7th averment of the special defenses reads:

"7th.—The defendant alleges that the plea of prescription contained in the complaint should not lie for the following reasons:

"*a.* Because the original return rendered was not correct or truthful inasmuch as it did not include all the income received by the taxpayer during the corresponding taxable year.

"*b.* Because in the investigation practiced *ad hoc,* the Department of Finance discovered considerable amounts received as income on account of distributed profits of a partnership of which the taxpayer was a member which income had been undisclosed up to that time by the taxpayer himself.

"*c.* Because by virtue of such attitude of the plaintiff it was necessary to prepare an additional return of said income.

"*d.* Because the taxpayer subscribed under oath, without any protest, the additional return prepared *ex officio* by the internal revenue inspector, Mr. Roig, wherein such sums of income were stated as the taxpayer had received as profits distributed by "Succrs. of Bianchi," which up to that time the plaintiff kept undisclosed.

"*e.* That the original return being open to the alleged charge of untruthfulness, the right of prescription cannot be invoked by the taxpayer against the Treasurer of Puerto Rico according to law.

"*f*. That the mere fact that the plaintiff subscribed said additional return without protest is equivalent to a formal statement of the taxpayer which bars the plea of prescription.

"*g*. That from the filing of the original return to the time when the additional one was filed, 3 years did not elapse but 2 years and 1 month."

The parties finally submitted the case to the decision of the court by means of the following stipulation on the facts:

"2nd.—The return No. 9 corresponds to the fiscal year of 1917, by virtue of the Federal Law of September 8, 1916, amended on October 3, 1917.

"3d.—Said return was signed and filed by the plaintiff before an inspector of the Department of Finance, on May 5, 1920. Prior to that date the plaintiff had rendered return No. 9 corresponding to the taxable year of 1917, which did not include all the amounts it should, with respect to the gross income received by the plaintiff during the year, in accordance with the provisions of the Federal Law of September 8, 1916 and amended on October 3, 1917.

"4th.—Said return No. 9 prepared by the inspector of the Department of Finance, was so prepared as a result of an investigation practiced by the same inspector of the transactions and business of the firm "Succrs. of Bianchi," to which the plaintiff belonged as partner during the year 1917.

"5th.—Although the tax which is sought to be refunded, arises from an additional or amended return or statement of income, prepared *ex officio* by an inspector of the Department of Finance of Puerto Rico in accordance with the outcome of an investigation which he was ordered to carry out of the transactions of the firm "Succrs. of Bianchi," of which the plaintiff was a partner, the same return was voluntarily signed under oath by the taxpayer himself, without objection or protest. Said additional or amended return included the profits which the taxpayer had reported in the first return No. 9 corresponding to the calendar year of 1917 which the taxpayer himself subscribed and swore before the collector of internal revenue of Mayagüez and in addition it included other profits distributed by the firm "Succrs. of Bianchi" amounting to $86,795.88, which the plaintiff had not reported or included in the original return corresponding to said year.·

"6th.—According to the return originally presented and sworn by the taxpayer before the collector of internal revenue of Maya-

güez, a tax was assessed on him for the amount of $333.71, and notice thereof was given to the plaintiff on May 29, 1918. The second return No. 9, namely the one wherein the income amounting to $86,795.88 and not included in the former return, appeared, was subscribed voluntarily and under oath by the taxpayer himself before the inspector of internal revenue, Mr. Roig, on May 5, 1929.

"7th.—On July 10, 1922, according to said return, the Treasurer of Puerto Rico assessed on the plaintiff as income taxes, by virtue of the above mentioned Federal Law of September 8, 1916, amended on October 3, 1917, the amount of $4,113.99.

"8th.—Upon notifying the taxpayer that he should pay, according to the said amended or additional return, the sum of $4,447.70, the $333.71 which the taxpayer had paid according to the original return, receipt No. 5, having been accredited to him, and hence a balance of $4,113.99 remaining in favor of the Treasury, the taxpayer requested a reconsideration, which was denied.

"9th.—On July 10, 1922, the taxpayer having exhausted all remedies, he was notified and requested to pay the tax on the 20th of said month and year. On August 4, 1922 payment was once more demanded from him and in addition he was given notice of the amount of the tax, surcharges, and interests which raised the indebted sum to $4,360.83.

"10th.—On July 26, 1922 the taxpayer, represented by the attorney Mr. J. J. Ortiz Alibrán, alleged in writing the prescription of the right of the Department of Finance to collect the tax, and prayed for the cancellation of receipt No. 5A for the sum of $4,113.99, plus surcharges and interests, namely $4,360.83. On August 8, 1922 the Treasurer of Puerto Rico denied the petition for cancellation on the ground that 3 years had not intervened between March 30, 1918, the date of the filing of the original return, and May 5, 1920, when the amended return was filed.

"11th.—The plaintiff subsequently availed of the professional services of the attorney Mr. Cayetano Coll y Cuchí to arrest, by means of several petitions for postponement and investigation, the action on the part of the Treasurer of Puerto Rico to collect said tax. In addition he also used later the resources of Mr. A. Fábregas to arrest by means of administrative remedies the action to collect.

"12th.—On October 13, 1923, the inspectors of the Treasury Department commissioned to practice the investigation which was ordered at the request of the attorney Mr. Coll y Cuchí in the name of the taxpayer, informed the Treasury Department that they had

not been able to accomplish the same because the taxpayer told them that the books of the partnership "Succrs. of Bianchi" had been destroyed in the earthquake of 1918.

"13th.—On September 24, 1925, at the request of the plaintiff, the Treasurer of Puerto Rico once more stayed the auction sale of the attached property of the plaintiff, which had been set for October 8, 1925.

"14th.—On July, 1927, the plaintiff took an appeal to the Board of Review and Equalization, claiming in said appeal that the income tax assessed on the plaintiff was barred in accordance with the law.

"15th.—On March 11, 1930, the secretary of the Board of Review and Equalization notified the plaintiff that said appeal could not be allowed for it had been filed out of time.

"16th.—On June, 1930, the Treasurer of Puerto Rico attached in the name of The People of Puerto Rico real property of the plaintiff; said real property would have been sold at auction if the assessed tax was not paid by the plaintiff, and in order to avoid the sale at auction the plaintiff paid under protest the tax assessed.

"17th.—During all this time in which the return was filed in thet Treasury Department of Puerto Rico and up to September 17, 1930, the plaintiff has not paid either the Treasurer of Puerto Rico or any officer or employee of the Department of Finance, the amount claimed in the complaint."

The district court decided the case in favor of the taxpayer and the Treasurer took the present appeal from the judgment thereof.

Notwithstanding that it was stated in the stipulation that "on September 24, 1925, at the request of the plaintiff, the Treasurer *once more stayed* the auction sale of the attached property of the plaintiff," (italics ours), which seems to implicate that another auction was formerly stayed and therefore that the proceeding formally demanding payment of the tax had been commenced prior to that date, the truth is that from the stipulated facts upon which the judgment of the court was based, no exact datum appears showing the date on which the distraint proceeding commenced.

This being the case, whether the term of five years be counted from the date on which the original return was filed,

or the same be computed taking as basis the 5th of May, 1920, it must be concluded that the same had expired on the only date on which the attachment and auction are dealt with in the stipulation, September 24, 1925.

It is stated in the stipulation that the tax was notified on July 10, 1922, that payment was once more demanded from the taxpayer on August 4, 1922, that the steps taken for collection were stopped by virtue of a petition of the taxpayer through his attorney Coll y Cuchí and through José A. Fábregas. However, that is not sufficient to conclude according to the decisions, that the distraint proceeding for the collection of the tax had been commenced.

In *Bowers* v. *N. Y. & Albany Co.,* 273 U. S. 346, wherein the National Supreme Court held that the action of the collector to collect taxes was barred, the facts of one of the three cases considered are narrated at the outset of the opinion, as follows (italics ours):

"In No. 366, respondent, March 26, 1918, filed its return of income and excess-profits taxes for 1917 and paid the amount shown due. *Shortly before the expiration of five years* after the return *the commissioner assessed and the collector demanded payment of additional income* and excess-profits taxes. Respondent refused to pay. *More than five years after the return the collector distrained* and sold personal property of the respondent to pay the amount claimed."

It is clear, then, that in spite of the assessment having been made and the Commissioner having demanded the additional payment within the five years, the distraint proceeding was not deemed commenced within said period of time, for the reason that said proceeding is only deemed commenced when property of the taxpayer is attached for the collection of the tax.

This appears from the provisions in Sections 334 and 335 of the Political Code. The first refers to the notice which the collector must give to the delinquent taxpayer and the second provides:

"Sec. 335.—If any person neglects or refuses to pay his or her taxes within the period prescribed in section 334 of this Title, the collector or any other duly deputized agent of the Treasurer, shall, after the written consent of the Treasurer shall have been obtained, proceed to collect the same by the attachment and sale of the property of such debtor, in the manner hereinafter provided."

The notice alone is not sufficient to commence the proceeding to collect. This is accomplished by the attachment and sale of the property of the debtor.

That being the construction which should be given to the facts and the law in this case; no question whatsoever of falsity or fraud appearing in our opinion from the stipulation, the appeal must be dismissed and the judgment appealed from affirmed.

Mr. Justice Córdova Dávila took no part in the decision of this case.